IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PRONCELL FOSTER,

    Plaintiff,               No. CIV S-03-2193 GEB GGH P

  vs.

MENDOZA, et al.,

    Defendants.       FINDINGS AND RECOMMENDATIONS

_____/

Introduction

       Plaintiff, a former state prisoner proceeding pro se,[1] seeks relief pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' December 23, 2005, motion to dismiss, to which plaintiff filed an opposition on January 17, 2006; defendants' reply was filed on January 30, 2006.

Second Amended Complaint

       This action, originally filed on October 17, 2003, is proceeding on a second amended complaint, filed on December 20, 2004, against defendants Warden Teresa A. Schwartz; Correctional Counselor (CC)II J. Bautista; Capt. Mendoza; CCI D. Pappa; Lieut.

---

[1] Plaintiff's most recent change of address indicates that he has paroled, as of March 8, 2006. See docket entry #'s 40 and 42.

1

Rosko[2]; Correctional Officer (C/O) Oldham-Summers[3]; Appeal Coordinator CCI M. Cry; Sgt. Ruiz.

   Plaintiff alleges that he was deprived of due process, on July 10, 2003, by the manner in which defendants CCI Pappa, CCII Bautista, CCI K. Hayward (not a defendant), Acting Facility Captain (Lieut.) B. Rosko, and Facility Captain Mendoza conducted his classification hearing extending his C-custody status at CMF.  Second Amended Complaint (SAC), p. 8. An instructor named Escobar, not a defendant, had confiscated plaintiff's work card when he had asked to go the restroom.  Id.  Plaintiff is housed in Unit 4, which houses inmates with HIV/AIDS.  Id.  Plaintiff could not work or attend school once his work card had been confiscated.  SAC, p. 9.  As a result, plaintiff was given a serious rules violation report (RVR) for refusal to work; at the CDC 115 hearing held on July 3, 2003, for the RVR; defendant Rosko dropped the violation from serious to administrative, but used the report as the reason to place plaintiff on C-status at a Unit Classification Committee (UCC) Hearing of which he was the Acting Chairman.  SAC, pp. 8-9.

   Defendant Rosko allegedly violated plaintiff's due process rights by conducting both the prison disciplinary action and by chairing the classification hearing extending plaintiff's C-custody status.  Id.  Plaintiff was also deprived of staff assistance at the prison disciplinary hearing to which he was entitled under CAL. CODE REGS. tit.xv, § 3318, and because he has a learning disability under the ADA.  SAC, pp. 9, 15.  Defendant Rosko also retained plaintiff on C-status beyond the time for a classification review.  SAC, p. 15.  Defendant Rosko separated plaintiff from his cellmate simply to harass him; plaintiff was not allowed to be placed on another wing, unlike any other inmate.  AC, p. 16.

---

[2] Defendants' counsel has corrected plaintiff's spelling of this defendant's name from Roszko to Rosko.  The court will use the correct spelling for defendants' names in setting forth plaintiff's allegations.

[3] Defendant's counsel has corrected this defendant's name from Oldham to Oldham-Summers.

1    Plaintiff timely filed his June 21, 2003, grievance,[4] which bypassed "all
2 institutional levels" and was returned to him on July 22, 2003, from defendant Appeals
3 Coordinator Cry at the California Medical Facility (CMF).  On July 28, 2003, plaintiff mailed out
4 a director's level appeal, which was received on July 30, 2003, but returned to plaintiff on
5 August 11, 2003, indicating that plaintiff had filed the appeal beyond the 15-day limit for
6 initiating the grievance or had exceeded the time limit for appealing a lower level decision.
7 SAC, p. 10.  Defendant Cry and the chief of inmate appeals have rejected all efforts by plaintiff
8 to exhaust his appeal.  Defendants have conspired to retaliate against and harass plaintiff because
9 he has begun to fight for his rights.  Id.

10    Defendant Oldham-Summers conspired with Unit 4 staff, on July 10 and 25,
11 2003, and on August 1 and 2, 2003, by falsifying CDC 28 A forms that were submitted to the
12 classification hearing to retain plaintiff on C-status.  AC, p. 11.  From July 10, 2003, to February
13 18, 2004, plaintiff has been unconstitutionally retained on C-status as a result of CMF staff
14 discriminating against African-Americans with respect to C-status placement.  Id.  Plaintiff
15 alleges that one white inmate in V-wing, a Rocky Stewert [sic], refused school but was
16 reassigned to another job, not placed on C-status.  Id.  When African-American inmates try to
17 appeal this unequal treatment at CMF, they are retaliated against.  Id.

18    Plaintiff's grievances claiming harassment and retaliation against defendant
19 Oldham-Summers for presenting falsified 128 A reports and serious rule violations were rejected
20 by defendant Cry without cause; when plaintiff re-sent the appeals, they were returned with no
21 response.  Id.  Plaintiff's Fourteenth Amendment due process rights and his First Amendment
22 rights were thereby violated; CMF management and staff have engaged in a "Code of Silence"
23 and a conspiracy.  Id.
24 \\\\\

---

[4] It is unclear how plaintiff could have filed a June 21, 2003, grievance for events that occurred in July, 2003.

Defendant Pappa harassed and retaliated against plaintiff by falsifying classification reports and responded to plaintiff's September 10, 2003, grievance about him which plaintiff appealed; this appeal was rejected by defendant Cry. AC, pp. 11-12. Defendant Pappa further violated plaintiff's due process rights because he was on vacation when the thirty-day time limit elapsed in which plaintiff was due, after submitting a request to be taken off C-status, to be seen by the classification committee. AC, p. 12. This, too, is an example of the discrimination suffered by HIV/AIDS' African-American inmates at CMF. Id. Defendant Pappa did not allow plaintiff assistance at classification hearings. AC, p. 17.

Defendant Bautista was a part of and aware of the conspiracy against plaintiff to retain him on C-status by use of falsified documents. Id. Defendant Ruiz deprived plaintiff, due to his C-status, of law library access on September 13, 17, and 20, 2003, and of his right to attend a religious service on September 13, 2003 in violation of his First Amendment rights. AC, pp. 12-13. When plaintiff appealed, the appeal was partially granted and he was allowed to attend church. AC, p. 13. However, plaintiff sent a third level appeal, on October 17, 2003, that was still pending and was beyond the 60-day limit for a response, as of February 18, 2004, when this complaint was filed. *The court notes that this action, however, was filed on October 17, 2003, the same day plaintiff states that he initiated the third level appeal.*

Defendant Mendoza was the main chairperson of Unit 4's classification committee and intentionally acted to place African-Americans on C-status without due process. Id. Mendoza discriminated against African-American inmates by placing them on C-status absent procedural due process. Id. Mendoza supervised all of the other defendants, except defendant Schwartz, and was aware of and part of the conspiracy to falsify documents against plaintiff and to discriminate, retaliate against, and harass him. Id.

Plaintiff's administrative appeal was rejected by defendant Cry and at the third level. Id. Defendant Cry rejected and on one occasion lost an appeal re-sent to him and has refused to process appeals to the third level or has rejected them, even when plaintiff has

followed instructions from the third level, in violation of his First Amendment rights and Fourteenth Amendment (due process) rights.  AC, p. 14.  Defendant Cry arbitrarily rejects most inmate appeals at CMF.  Id.  On July 22, 2003, plaintiff sent an appeal concerning staff misconduct by defendants Rosko and Oldham-Summers, which he re-sent but which was lost by the appeal coordinator (presumably, Cry).

On September 19, 2003, defendant Cry refused to file a CDC ADA 1824 form filed by plaintiff, complaining of discrimination by medical and custody staff by revealing the confidential information to plaintiff's ex-girlfriend that plaintiff was HIV/AIDS positive.  Id.  Plaintiff sent the ADA 1824 form on the third level, which informed him that the form had to be processed first and directly through the second level, which is an example of how plaintiff follows directions from the third level which only results in appeals be rejected at the second level by defendant Cry.  Id.

Plaintiff informed defendant Schwartz by confidential mail of his allegations of violations of his constitutional rights.  AC, p. 15.

Plaintiff also alleges state law negligence claims against defendants.  Plaintiff seeks money damages and injunctive relief.  As to any claims for injunctive relief, as court records indicate that plaintiff is no longer incarcerated at that institution and, in fact, appears to have paroled, the undersigned finds that any such claims have been rendered moot.  When an inmate seeks injunctive relief concerning an institution at which he is no longer incarcerated, his claims for such relief become moot.  See Sample v. Borg, 870 F.2d 563 (9th Cir. 1989); Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir. 1986).  See also Reimers v. Oregon, 863 F.2d 630, 632 (9th Cir. 1988).  As plaintiff has been released, he can demonstrate no reasonable possibility that he will be incarcerated at California Medical Facility at any predictable time in the future.  Therefore, plaintiff's injunctive relief claims should be dismissed.

\\\\\

\\\\\

Motion to Dismiss

Defendants move for dismissal on the grounds that: 1) under non-enumerated Fed. R. Civ. P. 12(b), plaintiff failed to exhaust administrative remedies prior to filing suit; and 2) under Fed. R. Civ. P. Rule 12(b)(6), the complaint fails to allege facts sufficient to state one of his First Amendment claims as to defendants Schwartz, Rosko, Cry and Ruiz. Motion to Dismiss (MTD), pp. 1, 3.

*Failure to Exhaust - Legal Standard under Non-Enumerated Fed. R. Civ. P. 12(b)*

In a motion to dismiss for failure to exhaust administrative remedies under non-enumerated Rule 12(b) of the Federal Rules of Civil Procedure, defendants "have the burden of raising and proving exhaustion." Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). The parties may go outside the pleadings, submitting affidavits or declarations under penalty of perjury, but plaintiff must be provided with notice of his opportunity to develop a record. Wyatt v. Terhune, 315 F.3d at 1120 n.14. The court provided plaintiff with such fair notice by order filed on August 18, 2005.

Should defendants submit declarations and/or other documentation demonstrating an absence of exhaustion, making a prima facie showing, plaintiff must refute that showing; however, the ultimate burden remains with defendants. Plaintiff may rely upon statements made under the penalty of perjury in the complaint if the complaint shows that plaintiff has personal knowledge of the matters stated and plaintiff calls to the court's attention those parts of the complaint upon which plaintiff relies. If the court determines that plaintiff has failed to exhaust, dismissal without prejudice is the appropriate remedy for non-exhaustion of administrative remedies. Wyatt v. Terhune, 315 F.3d at 1120.42

*PLRA Requirements*

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) provides that, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

such administrative remedies as are available are exhausted." Inmates seeking injunctive relief must exhaust administrative remedies. Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999). In Booth v. Churner, 532 U.S. 731,121 S. Ct. 1819 (2001), the Supreme Court held that inmates must exhaust administrative remedies, regardless of the relief offered through administrative procedures. 532 U.S. at 741, 121 S. Ct. at 1825. Therefore, inmates seeking money damages must also completely exhaust their administrative remedies. Booth v. Churner, 532 U.S. 731, 121 S. Ct. 1819 (inmates seeking money damages are required to exhaust administrative remedies even where the grievance process does not permit awards of money damages). 42 U.S.C. § 1997e(a) provides that no action shall be brought with respect to prison conditions *until* such administrative remedies as are available are exhausted. McKinney v. Carey, 311 F.3d 1198 (9th Cir. 2002).

*Administrative Exhaustion Procedure*

In order for California prisoners to exhaust administrative remedies, they must proceed through several levels of appeal: 1) informal resolution, 2) formal written appeal on a CDC 602 inmate appeal form, 3) second level appeal to the institution head or designee, and 4) third level appeal to the Director of the California Department of Corrections. Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. 15, § 3084.5). A final decision from the Director's level of review satisfies the exhaustion requirement. Id. at 1237-38.[5]

*Discussion*

Defendants contend that plaintiff failed to exhaust the prison's administrative grievance process prior to filing suit, stating that the conduct alleged in the complaint did not begin until May 24, 2003. As the court has noted, plaintiff's complaint was filed on October 17, 2003. Between April 2003 and February 2004, according to defendants, plaintiff submitted only

---

[5] Defendant's counsel has corrected defendant Oldham's name to Oldham-Summers.

two appeals to the third or director's level, that were in compliance with the regulations governing the appeals process. MTD, Exhibit (Exh.) 1, Declaration of Chief of Inmate Appeals Branch N. Grannis, ¶ 4. Final decisions at the director's level were not rendered on these grievances, at the director's level, until December 3, 2003 and April 8, 2004. MTD, Exh. 1 ¶ 4; Exh. 5 at p. 1-2. Thus, plaintiff failed to exhaust administrative remedies prior to filing suit. MTD, p. 6.

In addition, the first grievance, denied at the third level on December 3, 2003,[6] not submitted to the director's level until October 3, 2003, concerned issues and facts unrelated to the plaintiff's allegations. MTD, Exh. 3 at pp. 3-5. This grievance concerned a rules violation report (115) issued by Defendant Oldham-Summers on May 24, 2003, for delaying a peace officer/institutional count, wherein plaintiff admitted that Oldham-Summers' allegations were factually correct, but asserted that his conduct was justified. Id. More than three months later, plaintiff filed a grievance alleging that Oldham-Summers intentionally placed false serious rules violation reports (CDC 128s) in his central file, which appeal was not exhausted until April 2, 2004. MTD, p. 6, Exh. 5.

Plaintiff argues in his opposition that he made efforts to exhaust his appeals before filing suit, but that his appeals were rejected. He claims that he filed such a grievance against defendant Rosko that was rejected, referring to exhibits attached to his first amended complaint on September 23, 2004. Opp., p. 2.

Among the exhibits plaintiff includes is a June 1, 2004, third level decision denying his appeal with regard to his claim that he is being discriminated against by not being allowed to choose his cell partner, a claim that he may seek to be making with respect to defendant Rosko within this action. Although not referenced by defendants, the date of this

---

[6] For some reason, defendants do not include a copy of the December 3, 2003, third level appeal response, but the court finds it unnecessary not only because the underlying grievance, as defendants point out, is not implicated by the allegations of this complaint.

appeal denial illustrates that this claim was not exhausted at the time plaintiff filed this action. In fact, plaintiff's exhibits show that he did not even initiate this grievance until November 5, 2003, almost a month after this case was filed. This claim of discrimination should be dismissed as unexhausted.

Plaintiff has not in his opposition produced exhibits in a manner to support the allegations of his complaint or to oppose the motion to dismiss for failure to exhaust administrative remedies. In the apparently randomly organized bulk of exhibits that to which he asks the court to refer, it is evident that defendant Cry has rejected a number of his appeals. A review indicates that certain of his appeals have been rejected for failing to attempt to resolve the matter first at the informal level (rejected 8/12/03)[7], for attempting to submit a grievance on behalf of another inmate (rejected on 11/14/03), for failing to adequately complete the 602 form or failing to attach the proper documents (rejected 9/15/03 (same form also dated 9/22/03), also rejected for this reason on 11/24/03). A grievance evidently related to a complaint by plaintiff that his mail was opened outside his presence was rejected on 10/15/03 (also dated 10/17/03) because the mail at issue did not meet the confidential correspondence specifications per CAL. CODE REGS. tit.xv, §§ 3141 and 3144, which were attached to the rejection form. On 7/22/03, an appeal regarding staff misconduct was rejected by defendant Cry because the action complained of "ad min lock-up status" had not yet occurred. Plaintiff's grievance concerning the alleged misconduct of a staffmember, not a defendant herein, was rejected on 1/22/04 because it was a duplicate. Plaintiff's grievance concerning his disabilities was rejected on 10/17/03 because plaintiff had not attempted to resolve his problem informally, his disabilities were not covered under the Armstrong Remedial Plan, and he had not demonstrated that he was suffering any adverse impact. Plaintiff was directed on the form to file a 602, not the 1824 (or 1424?) form.

---

[7] This rejection apparently involved plaintiff's grievance concerning his wish to be re-classified after being retained on C-status. Attached to the rejection form was a copy of the applicable regulation informing plaintiff that he must submit a written request concerning the matter to defendant Pappa, after which a hearing would be scheduled 30 days thereafter.

Plaintiff included one grievance, dated 11/4/02, without the rejection form, which was stamped "rejected," wherein plaintiff claims discriminatory conduct on the part of defendant Rosko, but fails to specify or define the alleged conduct in any manner.

Plaintiff has not organized the exhibits so that it is plain what grievance is being rejected. Most of the dates on the forms indicate that the grievances at issue were filed beyond the filing date of this action. Although plaintiff claims to have been diligent and to have been improperly thwarted by defendant Cry in his efforts to process his appeals, his exhibits, on the face of it, do not support that conclusion. Where grievances have been rejected, plaintiff simply makes no significant showing that such rejections have been unprocessed for ulterior motives or as a result of a conspiracy. Plaintiff has failed to identify any exhibit that demonstrates that he was improperly denied the processing of a grievance. Plaintiff's reliance on Ngo v. Woodford, 403 F.3d 620 (9th Cir. 2005), is unavailing because that case has been reversed. Opp., p. 3. The Supreme Court, in Woodford v. Ngo, ___ U.S.___, 126 S. Ct. 2378, 2387 (2006), has found that the PLRA requires "proper exhaustion," which means that plaintiff may not excuse his failure to complete the administrative exhaustion process simply by alleging that defendants refuse to process his grievances, at least without some demonstration that his grievances have been properly filed in compliance with prison regulations, which plaintiff has failed to do here.

Defendants also aver that while plaintiff received a partial grant, on October 6, 2003, at the institutional, or second, level with respect to his grievance, apparently related to defendant Ruiz, that he was denied the right to attend a religious service on August 1, 2003, having submitted the grievance on August 24, 2003, that plaintiff did not thereafter seek a third level review. MTD, Exh. 4, p. 1. Defendants argue that notwithstanding the partial grant because plaintiff filed this action, he was evidently not satisfied and should have sought third level review of the grievance.

Within the second amended complaint, plaintiff sets forth that he did file a third level appeal, on October 17, 2003, an appeal that was still pending in February 18, 2004. As the

court has previously noted above, the problem for plaintiff is that October 17, 2003, is the same day that he filed the original complaint in this action. Therefore, pursuant to McKinney v. Carey, 311 F.3d 1198, this claim was not exhausted prior to plaintiff's having filed suit.

Defendants' motion should be granted on the grounds that plaintiff has failed to exhaust administrative remedies. The court need not address the motion to dismiss for failure to state a claim.

Accordingly, IT IS HEREBY RECOMMENDED that defendants' December 23, 2005, motion to dismiss be granted and this action be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 8/23/06

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:009
fost2193.mtd